IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 9, 2014

## MICHAEL MARTEZ RHODES v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2007-B-1384     Cheryl Blackburn, Judge**

**No. M2013-01168-CCA-R3-PC - Filed June 10, 2014**

The petitioner, Michael Martez Rhodes, appeals the denial of his petition for post-conviction relief. In a best interest plea agreement, the petitioner pled guilty to two counts of attempted aggravated sexual battery, Class C felonies, and received two four-year sentences. The trial court subsequently ordered that the sentences be served consecutively in the Department of Correction. On appeal, the petitioner contends that his guilty plea was not knowingly and voluntarily entered due to the ineffectiveness of trial counsel. Specifically, he contends that trial counsel was ineffective because he "pushed" the petitioner to accept the guilty plea even though the petitioner maintained that he did not commit the acts for sexual gratification, an element of the offense. Following review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and ROBERT W. WEDEMEYER, J., joined.

Elaine Heard, Nashville, Tennessee, for the appellant, Michael Martez Rhodes.

Robert E. Cooper, Jr., Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Katrin Miller, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Procedural History

The facts underlying the petitioner's convictions, as stated in this court's opinion on direct appeal, are as follows:

On April 5, 2006, the eleven-year old victim disclosed to her mother that her stepfather, the defendant, had grabbed her breasts. The victim's mother, who was the defendant's wife, immediately reported this to the Department of Children's Services and the Metro Police Department. A controlled telephone call between the victim's mother and the defendant was arranged by the detective assigned to investigate this case. During the telephone call, the defendant admitted that he had pinched the victim's breasts and had touched the outside of the victim's vagina. He claimed the touches were not sexual in nature but, rather, were playing and were intended to show her where she needed to shave and that she needed to start wearing a bra.

In another recorded telephone conversation between the victim's mother and the defendant, he made the same admissions and urged her not to reveal the information. He asked her to speak to the victim and instruct her not to tell anyone that he had touched her vagina. However, the defendant told the victim's mother that the victim could tell that he had touched her breasts.

The detective testimony would have been that he recorded an interview with the defendant in which the defendant acknowledged that he pinched the victim's nipples but denied that the touching was sexual in nature. . . .

*State v. Michael Martez Rhodes*, No. M2009-00077-CCA-R3-CD, 2010 Tenn. Crim. App. LEXIS 1032, **2-3 (Tenn. Crim. App. Dec. 8, 2010).

Based upon these actions, the petitioner was indicted for three counts of aggravated sexual battery. He subsequently entered a best interest guilty plea to two counts of attempted aggravated sexual battery in exchange for two four-year Range I sentences with the manner of service to be determined by the trial court. At the plea hearing, which occurred the day the jury trial was set to begin, the petitioner acknowledged the accuracy of the State's factual recitation, but he continued to deny that the touching had been done in a sexual manner. The trial court explicitly explained the meaning of a best interest plea and the rights the petitioner would be forfeiting by entering such a plea. The court explained the possible sentencing ramifications which could occur after a sentencing hearing was held. Particularly, the trial court emphasized that if the petitioner were to be granted probation and then denied or minimized his actions in sexual offender treatment, he would likely be terminated from the treatment program and suffer revocation of his probation.

The petitioner acknowledged that he had discussed the case with trial counsel, including discovery materials, possible defenses, and possible witnesses. The petitioner stated that he was satisfied with trial counsel's representation of the case. He acknowledged

that he had read the guilty plea agreement and stated that he had no questions concerning the petition. Trial counsel noted that he had discussed the plea agreement terms with the petitioner, and he felt that the petitioner understood the terms of the agreement and was making the decision to accept the agreement freely and voluntarily. The agreement was accepted by the trial court.

A sentencing hearing was later held before the trial court, and the victim, the petitioner, and the victim's mother testified. The victim related the effects of the petitioner's action upon her and how she would like to see him go to jail. *Id*. at 3. She did acknowledge that she had made similar allegations against another man and that she had been in counseling prior to making the allegations against the petitioner. *Id*. at 4. The victim also testified that the defendant often walked around the home in his boxers and that he would enter the bathroom while she was showering. *Id*. In the direct appeal opinion, it was noted that:

> The victim testified that on both occasions when the [petitioner] pinched her breasts, he told her that she needed to talk to her mother about wearing a bra. The victim testified that the [petitioner] was wearing boxers when he touched her breasts. She testified that he touched her vaginal area while she was in the shower. The [petitioner] told her she needed to start shaving "down there because [she] was starting to get a lot of hair right there." She testified that she wanted to shave and had discussed it with her mother but had not discussed it with the [petitioner].

*Id*. at **4-5.

The petitioner testified that, at the time, he was working at "a strip club," and the victim's mother worked at a different "strip club." *Id*. at *6. He acknowledged that it was common for him to walk around the house wearing only his boxers and that the family used the same restroom. *Id*. He testified that, until he was charged with the crimes, he had seen no problem entering the restroom while it was occupied. *Id*. at *7. He stated that he now understood that those actions were inappropriate. *Id*. The petitioner acknowledged his actions in touching the victim, but he maintained they were not done for sexual gratification.

The petitioner underwent a psychosexual evaluation, which concluded that he denied, defended, or repressed the truth of the events that had occurred. *Id*. The report stated a finding that the petitioner might have some sexual deviance or disorder resulting from his attitude toward women. *Id*. at *8. However, the report classified his risk for sexual recidivism as low, but noted that he had some enhancing factors present in the low category, including a need to control his anger and negative emotions. *Id*. The report also indicated

-3-

that it was unclear if the petitioner had a sexual interest in young girls or a disorder related to his attitudes toward females. *Id*.

After hearing the evidence presented, the trial court ordered the petitioner to serve his two four-year sentences consecutively in confinement. *Id*. at *10. He filed a direct appeal with this court, and the judgment was affirmed. *Id*. at *1.[1] The Tennessee Supreme Court denied his application for permission to appeal. *State v. Michael Martez Rhodes*, No. M2009-00077-SC-R11-CD, 2011 Tenn. LEXIS 429 (Tenn. Apr. 14, 2011).

The petitioner next filed a timely pro se petition for post-conviction relief, which was amended following the appointment of counsel. The petition alleged that the guilty plea was not made knowingly and voluntarily because trial counsel never explained to the petitioner that sexual gratification was an element that the State would have to prove. The amended petition alleged that trial counsel had pressured the petitioner into pleading guilty by not explaining that element. A hearing was held at which the petitioner and trial counsel both testified.

The petitioner testified that trial counsel was his attorney for approximately two and a half years, representing him through the direct appeal. He testified that he met with trial counsel at his office more "than a dozen times" while the petitioner was on bond prior to trial. The petitioner acknowledged that trial counsel thoroughly discussed the case with him, but he stated trial counsel never explained the elements of the crime the petitioner was charged with, specifically what the State had to prove. The petitioner stated that trial counsel never discussed a defense in the case, instead always pushing him to accept a plea agreement.

The petitioner testified that he rejected initial offers because they required jail time and that he be placed on the sexual offender registry. The petitioner did not dispute that he consistently admitted that he had touched the victim, but he explained to trial counsel that the touching was not for the purpose of sexual gratification. The petitioner related that he had pinched the victim's breasts and told her she needed to get a new bra. He characterized the vaginal touching as a teaching tool in that he was showing the victim where not to shave. The petitioner testified that trial counsel had asked him if he felt he should be punished for his actions, and the petitioner stated that he answered affirmatively but not in a manner consistent with the State's initial offers. The petitioner testified that he knew that he made a mistake but that the touching was not sexual in nature.

The petitioner stated that trial counsel had asked him to tell his version of events to

_____

[1]The case was remanded to the trial court for the limited purpose of entering corrected judgments to reflect that the petitioner entered a best interest guilty plea not a nolo contendere plea.

trial counsel's mother, who worked in his office, in order to get a lay person's reaction to the events. The petitioner testified that he refused because he felt he had already "told the people that needed to be told." The petitioner believed that trial counsel made this request because he did not believe the petitioner's accounting. However, on cross-examination, the petitioner acknowledged that trial counsel had told him that he made this request to gauge how the story would play to a jury.

The petitioner acknowledged that, on the morning of trial, trial counsel told the petitioner that he was ready for trial. However, according to the petitioner, they had not discussed a defense strategy or prepared the petitioner for trial. The petitioner felt that trial counsel was not really prepared for trial, and he did not feel right about going to trial. He testified that trial counsel should have made him feel that trial counsel was on his side. The petitioner stated that he believed that trial counsel wanted him to go to jail. He also felt that if he had gone to trial with competent counsel, he would have been acquitted.

The petitioner acknowledged that he told trial counsel that he wanted to plead no contest to the charges. While he agreed to accept the State's offer, which called for a sentencing hearing, the petitioner claimed that trial counsel never informed him what the sentencing hearing would entail. However, he did acknowledge that there was a discussion of the possible penalties and that trial counsel went to great lengths at the plea and sentencing hearings to make everyone aware that the petitioner did not commit the acts for sexual gratification.

Trial counsel testified that he was retained to represent the petitioner in this case and did so from the preliminary hearing through the direct appeal. He agreed with the petitioner's testimony that they met approximately a dozen times at his office in preparation for trial. Trial counsel stated that, during their first meeting, he and the petitioner discussed the facts of the case and the charges that were pending. According to trial counsel, the petitioner consistently admitted that the touching occurred, but he maintained it was not for the purpose of sexual gratification. Trial counsel testified that that was the defense he planned to pursue from the beginning.

Trial counsel related that although he understood the petitioner's argument regarding "no sexual gratification," he informed the petitioner that it would be hard to get twelve impartial jurors to understand his actions. In order to help the petitioner understand this, trial counsel asked the petitioner to speak with trial counsel's mother and others in the office about what had occurred. This was an attempt to see how the story played to regular people. Trial counsel felt it was important to see their reaction. He explained to the petitioner that by refusing to participate in this exercise, he was depriving trial counsel of seeing their reactions, which would have placed him in a better position proceeding to trial.

-5-

Trial counsel testified that there were several offers extended by the State. He testified that he relayed each of them to the petitioner when they were received. Trial counsel maintained that it was completely the petitioner's decision on whether to accept the plea agreement. He testified that throughout the entirety of his representation, the petitioner was in a "get-me-out-of-this-without-jail-time mind set." The petitioner told trial counsel that he wanted "the best deal, he would like to take a plea bargain and go home, no jail time." However, the State did not extend an offer that did not include some period of incarceration.

Trial counsel testified that he discussed the consequences of having a sentencing hearing with the petitioner and advised him that he could receive as much as an eight-year sentence in confinement. Trial counsel informed the petitioner, who was hoping for straight probation, that the trial court would consider multiple factors in making the determination, including that the petitioner had pleaded down a level.

After hearing the evidence presented, the post-conviction court took the matter under advisement. The court, by written order, subsequently denied the petition. The petitioner has timely appealed that denial.

**Analysis**

On appeal, the petitioner contends that the post-conviction court erred in denying his petition for relief. He asserts that his guilty plea was not entered knowingly and voluntarily because he was denied his right to the effective assistance of counsel. As his only allegation of ineffective assistance, the petitioner contends that trial counsel, from the beginning, "pushed" him "to take a plea bargain" despite the fact that the petitioner "also from the beginning maintain[ed] that he did not commit the acts for sexual gratification." The petitioner claims that "is tantamount to a claim of innocence" because the proper mens rea was not present. He asserts that he would have proceeded to trial had trial counsel described the defense process that would be employed at trial or given the petitioner an analysis of his chances at trial based upon the fact that the State had to prove that mens rea element.

In evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In making this determination, the reviewing court must look to the totality of the circumstances. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). Indeed, a

court charged with determining whether . . . pleas were "voluntary" and "intelligent" must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate that guilty pleas be voluntarily and intelligently made. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *Alford*, 400 U.S. at 31).

To succeed in a challenge for ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the petitioner must establish (1) deficient representation and (2) prejudice resulting from the deficiency. In the context of a guilty plea, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lockhart*, 474 U.S. at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997). The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably-based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceeding. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This deference to the tactical decisions of trial counsel, however, is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). "A trial court's findings of fact underlying a claim of ineffective assistance of counsel are reviewed on appeal under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d)). However, conclusions of law are reviewed under a purely de novo standard, with no presumption of correctness. *Id*. at 458.

Again, on appeal, the petitioner's only claim of ineffective assistance of counsel is based upon trial counsel's "pushing" him to accept the plea agreement and not explaining that the State had to prove that the acts were committed for sexual gratification. He faults trial counsel for not recognizing that "this was a complicated legal and factual issue dealing mostly with a determination regarding the mens rea aspect," and he asserts that trial counsel should have determined that the matter was best suited for a bench, rather than a jury, trial.

In the order denying relief, the post-conviction court found as follows:

> Petitioner alleges that Trial Counsel did not explain to him the nature and consequences of accepting the guilty plea and that he felt pressured to accept the plea because he felt Trial Counsel was not prepared. During the hearing, Petitioner acknowledged he was on bond during the entirety of the trial preparation and that he met Trial Counsel at his law office at least a dozen times. Petitioner's primary complaint is that he had repeatedly advised his counsel that while he touched his step-daughter's breasts and vaginal area he did not do so for the purpose of sexual gratification, but his conviction is for a crime that has this element. As reflected in the plea hearing transcript . . . , Trial Counsel announced on the record that the reason Petitioner was entering a best interest plea was because Petitioner has maintained that the actions were not done for the purpose of sexual gratification. . . . This Court, as documented in [the Court of Criminal Appeals'] opinion affirming Petitioner's sentencing, did not find Petitioner's explanation as to why he touched the victim to be credible:

> > Here, the trial court did not find credible the defendant's explanation that he did not understand that his actions were wrong. The court did not accept the defendant's argument that he was trying to instruct the victim that she needed to begin shaving and wear[ing] a bra. Instead, the trial court concluded that the defendant engaged in the touching for sexual gratification because it was not necessary for the defendant to enter the bathroom on multiple occasions while the victim was showering to deliver those instructions. Further, the victim testified that the defendant was aroused when he touched her breasts. . . .

> Moreover, the plea hearing transcript belies Petitioner's claims. As reflected in the plea hearing transcript . . . , Petitioner acknowledged he had thoroughly discussed his case with counsel and that he had been satisfied with

-8-

the work of Trial Counsel . . . .  This Court also engaged in an extensive discussion with Petitioner [regarding] the ramification of his best interest plea, explaining that while Petitioner was eligible for an alternative sentence, serving probation would require Petitioner to have sex offender treatment, which would involve admitting to the offenses, and he would be placed on the sex offender registry. . . .  The Court also explained the purpose of the sentencing hearing, which Petitioner affirmed he understood. . . .

At the sentencing hearing, . . . Petitioner testified that he elected to enter a best interest plea because he was hoping that he would not serve any time. . . . For all these reasons, the Court finds that Petitioner has failed to establish his post-conviction claims by clear and convincing evidence.  In making this determination, the Court notes that a plea is more than an admission; it is the petitioner's consent that judgment of conviction may be entered without a trial. . . .  Per the Tennessee Court of Criminal Appeals, "A petitioner's sworn responses to the litany of questions posed by the trial judge at this plea submission hearing represent more than lip service." . . . A petitioner's sworn statements and admissions of guilt stand as a witness against the petitioner at the post-conviction hearing when the petitioner disavows those statements. . . .

A review of the record, including the guilty plea hearing . . . and the sentencing hearing . . . , affirmatively demonstrates that the petitioner's best interest plea was made with an awareness of the consequences, and, as such, the guilty plea was voluntarily and knowingly entered. . . .

## I. Ineffective Assistance of Counsel

Following review of the record, we conclude that nothing preponderates against the findings made by the post-conviction court that trial counsel's representation was not deficient.  The testimony of the petitioner belies his claim that trial counsel "pushed" the petitioner to accept the plea agreement.  The petitioner testified that it was his decision to accept the agreement.

Trial counsel and the petitioner both agreed that they met over a dozen times in the year and a half the case was pending before trial.  The petitioner acknowledged that he and trial counsel had thoroughly discussed the case.  Trial counsel testified that from the first meeting that the petitioner maintained that the touching was not done for the purpose of sexual gratification.  He noted that was the defense they intended to pursue from the beginning and that it never changed.  Trial counsel was clearly proceeding under the theory

of the petitioner's choice. He made that clear to the State and the trial court at the plea acceptance hearing.

The petitioner testified that trial counsel told him, on the day the case was set for trial, that he was prepared to try the case before a jury. Trial counsel did acknowledge that he might have been somewhat more prepared had the petitioner taken his advice and told his story to the employees of trial counsel's firm in order to gauge the "average's persons" viewpoint of the actions taken by the petitioner. However, it was the petitioner who refused to participate in the exercise which would only aid in his defense.

The record established that trial counsel was not deficient in this case. He met with the petitioner on multiple occasions, explained the charges which the petitioner was charged with, and informed the petitioner of the possible sentencing ranges. The petitioner has failed to carry his burden on this record. Trial counsel reviewed the discovery and possible evidence available in the case. He was aware of the petitioner's defense and did all that he could with the facts of the situation. The petitioner is entitled to no relief.

## II.  Knowing and Voluntary Plea

The petitioner further contends that his plea was not entered knowingly and voluntarily. The record is clear that it was the petitioner who told trial counsel that he wanted to plead guilty in the case. The record also establishes that trial counsel explained the terms and conditions of the plea agreement, including the possibilities of accepting an agreement with partial open sentencing. Moreover, prior to accepting the plea, the trial court very explicitly covered the terms of the agreement and trial counsel's performance. The petitioner stood before the court and stated that he was choosing to plead guilty under those terms. As noted by the post-conviction court, the petitioner may not now disavow that testimony, as his prior sworn testimony stands in direct contradiction to what he now asserts.

As the post-conviction court found, the petitioner appeared to be motivated by a desire to avoid incarceration. As the State would not offer an agreement which did not require service of at least some jail time, the petitioner obviously thought taking his chances with the sentencing court to get probation was his best option. As noted, trial counsel and the court both explained the consequences of taking that action.

Viewing the totality of the circumstances, we, like the post-conviction, court simply cannot conclude that this plea was not entered into knowingly and voluntarily. Trial counsel and the petitioner met together multiple times and discussed the case, defenses, and possible outcomes. The petitioner himself acknowledges that he made the choice to plead guilty. Having previously determined that trial counsel was not deficient and that he had in fact

made clear the elements of the crime and the defense which they would pursue, we must conclude that the petitioner, aware of these fact, chose to accept the agreement. He stood before the trial court and stated that he had read the petition, that he understood it and its resulting consequences, and that he had no questions about the agreement. The petitioner made a decision to accept the agreement and now attempts to disavow those acts as involuntary because he was not given the sentence he desired. That does not establish an unknowing and involuntary guilty plea.

## CONCLUSION

Based upon the foregoing, the denial of post-conviction relief is affirmed.


_____

JOHN EVERETT WILLIAMS, JUDGE